ADAMS, Justice.
These appeals involve an action alleging fraud brought by Louis Glenn Morris against Laketate, Inc., John K. and Betty Cleghon, and June and Earl Atkinson, and a cross-claim filed by the Cleghons against June and Earl Atkinson for breach of fiduciary duties involving the sale of certain land in Talladega. Previously, this claim also included a cross-claim for specific performance filed by the Cleghons against Laketate. That claim was severed and has been resolved in Laketate, Inc. v. Cleghon, 533 So.2d 562 (Ala.1988). That case sets forth some of the facts needed to resolve the case before us:
“The Cleghons owned a lot and house adjacent to Lake Tate Subdivision, located in Talladega County, Alabama. Lake-tate, Inc., was a corporation made up of lot owners of Lake Tate Subdivision. To purchase a lot within Lake Tate Subdivision required approval by the shareholders of Laketate, Inc. In the early part of 1984, the Cleghons approached a real estate agent, Earl Atkinson, concerning the possible purchase of a piece of property located between the Cleghons’ lot and the lake itself, such property being located within Lake Tate Subdivision and thus being controlled by Laketate, Inc. Atkinson approached the board of directors of Laketate, Inc. After the offer was discussed at a shareholders meeting held on April 7, 1984, the Cleghons received approval for the sale, whereupon a letter was written to the Cleghons, signed by Mark Ray, president of Lake-tate, Inc., informing them that the sale of the land had been approved by the board and authorizing them to conduct a survey. A survey was conducted and a deed drawn conveying the property from Laketate, Inc., to the Cleghons. The deed was subsequently signed by Ray, as president of Laketate, Inc. However, the deed was never delivered to the Cle-ghons, Laketate claiming that there was a discrepancy between the size of the lot as it was originally discussed and as it was described in the survey and on the deed. The proposed sale was brought up again at the regular fall meeting of the shareholders, and approval was revoked.
“On May 14, 1985, Louis Glenn Morris, who had subsequently contracted to buy the lot owned by the Cleghons along with the disputed strip of land located in Lake Tate Subdivision, filed suit against Lake- *408 tate, Inc., John and Betty Cleghon, and June L. Atkinson and Earl Atkinson, individually and doing business as Atkinson Real Estate, alleging breach of contract to convey real estate, fraud, and misrepresentation and seeking specific performance of an alleged contract and monetary damages. The Cleghons filed a cross-claim against Laketate, Inc., and a third-party complaint against Mark Ray, alleging breach of an agreement to sell real estate, fraud, and misrepresentation and seeking specific performance and monetary damages. The trial court entered a judgment in favor of the Cleghons on August 18, 1987, finding that a written contract did exist to convey the real estate as described in the survey; that Laketate, Inc., had caused a deed to be prepared after receiving a copy of the survey; that a deed was executed by Laketate; that the Cleghons took possession of the subject property; and that the Cleghons had been and were able to make payment of the agreed upon consideration. The trial court then ordered that the deed from Laketate to the Cle-ghons be ‘executed.’ ...”
Id. at 562-63.
Despite the fact that Laketate executed the deed to the Cleghons, who in turn executed a deed to Morris of the disputed lakefront property, Morris nevertheless pursues his claim for fraud against the above-named parties. The trial judge entered summary judgment in favor of all defendants and dismissed the cross-claim. Morris appeals, arguing that the trial judge erred in entering summary judgment. He contends that the Cleghons knew that they were experiencing problems with the acquisition of the lakefront property and yet represented to him that things had all been approved and that they were just waiting for the delivery of the deed. He concedes that he knew that the transfer of the lakefront property was not complete when he purchased the Cleghons’ home. Nevertheless, he argues that they misrepresented the status of the transfer. There is no argument that the Cleghons represented to Morris that the transfer would occur within a certain time frame.
We have held that ordinarily a party cannot recover damages for fraud and at the same time receive the relief of specific performance. In Stringfellow Materials, Inc. v. Lee, 438 So.2d 1387 (Ala.1983), we stated as follows:
“Appellants also contend that the trial court erred in granting damages for fraud for concealment of the outstanding mortgage and, at the same time, granting specific performance of the contractual agreement. Appellants, in their brief, rely on Gulf Oil Corp. v. Spriggs Enterprises, 388 So.2d 518 (Ala.1980), for the proposition that the court may not award damages for the tort of fraud and misrepresentation, and, in addition, grant specific performance of the agreement.”
Stringfellow, supra, at 1390. In that case the trial judge had ordered specific performance or damages for fraud; the order was phrased in the alternative. Id. at 1390. In the present case, Morris received specific performance of the contract as soon as the Cleghons were granted specific performance of their own contract with Laketate, Inc. Based on the foregoing authority, the trial judge correctly entered the summary judgment on the fraud counts. Because of our ruling with regard to the allegations of fraud, the Cleghons’ cross-claim is moot.
For the foregoing reasons, the judgment is hereby affirmed.
89-409 AFFIRMED.
89-492 DISMISSED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.